RALPH BAVUSO *vs.* CATERPILLAR INDUSTRIAL, INC.

Middlesex. September 6, 1990. - November 28, 1990.

Present: NOLAN, LYNCH, O'CONNOR, & GREANEY, JJ.

*Negligence*, Manufacturer, Forklift truck, Duty to warn.

In a civil action alleging a breach of implied warranty of merchantability of a forklift truck by reason of the manufacturer's failure to furnish adequate warnings of hazards in connection with operation of the forklift, the defendant's motion for judgment notwithstanding the verdict should have been allowed where the danger of which the plaintiff claimed he was not adequately warned was obvious. [699-702]

CIVIL ACTION commenced in the Superior Court Department on November 9, 1981.

The case was tried before *Katherine Liacos Izzo*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Timothy Wilton* for the defendant.

*Kenneth A. Pollenz* for the plaintiff.

GREANEY, J. In response to special questions, a jury in the Superior Court concluded that the defendant, Caterpillar Industrial, Inc., had committed a breach of its implied warranty of merchantability in the manufacture of a forklift truck leased by the plaintiff's employer. The verdict was premised on a finding that the defendant had failed to furnish adequate warnings of hazards in connection with the plaintiff's operation of the forklift. A judgment awarding damages in accordance with the jury's verdict was entered, and the defendant appealed. We transferred the case to this court on our own motion. We conclude that it was error to deny the defendant's motion for judgment notwithstanding the verdict because the danger which the plaintiff claims he was not ad-

equately warned of was obvious. Accordingly, we reverse the judgment and direct the entry of judgment for the defendant.

We state the facts under the standard applicable to a motion for judgment notwithstanding the verdict.[1] The defendant manufactured the forklift that the plaintiff was using when he was injured. The front portion of the forklift consisted of the mast, the forks, and the load backrest extension. The mast is a vertical structure of two uprights or columns, seventy-three inches tall. The two forks project forward from the base of the mast. The forks ride up the mast and support and lift the load from beneath. The backrest extension serves as a fence to stabilize the load from the rear and prevent it from falling backwards. (A view of the forklift and these components accompanies this opinion. See Appendix.) On the forklift involved in this case the backrest extension was thirty-six inches tall.[2] The entire structure, mast, forks, and backrest, could tilt forward roughly six degrees and backward roughly twelve degrees. The forklift had the capacity to raise the forks 106 inches. Thus, it was possible to raise a load above the seventy-three inch height of the mast columns so that the only support preventing the load from falling backward was the backrest extension.

---

[1]In ruling on a motion for judgment notwithstanding the verdict, "the judge's task, 'taking into account all the evidence in its aspect most favorable to the plaintiff, [is] to determine whether, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, the jury reaonably could return a verdict for the plaintiff.' *Tosti* v. *Ayik*, 394 Mass. 482, 494 (1985), quoting *Rubel* v. *Hayden, Harding & Buchanan, Inc.*, 15 Mass. App. Ct. 252, 254 (1983). The court will consider whether 'anywhere in the evidence, from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be drawn' in favor of the non-moving party. *Poirier* v. *Plymouth*, 374 Mass. 206, 212 (1978), quoting *Raunela* v. *Hertz Corp.*, 361 Mass. 341, 343 (1972). The inferences to be drawn from the evidence must be based on probabilities rather than possibilities and cannot be the result of mere speculation and conjecture. *Id.*" *McNamara* v. *Honeyman*, 406 Mass. 43, 45-46 (1989).

[2]The backrest originally had been forty-eight inches high. It was cut down to thirty-six inches to improve clearance.

The forklift operator sits directly behind the mast. To protect the operator from falling objects, some forklifts are equipped with overhead guards. An overhead guard is an open sided canopy of tubular metal with metal slats across the top. (See Appendix.) The forklift in this case was equipped with an overhead guard, but the plaintiff's employer had removed it to improve clearance. There was no overhead guard on the forklift at any time that the plaintiff was using it. Operation of a forklift like this one without the guard is specifically permitted by the Occupational Safety and Health Administration, in some circumstances, see 29 C.F.R. § 1917.43 (e) (iv) (1990), and such operation is common in the truck loading industry.

The plaintiff was nineteen years old at the time of the accident and had been operating forklifts since junior high school and through high school (during part-time and summer jobs).[3] As to this forklift, the plaintiff had operated it as an employee of the Rafter Recycling Corporation (which leased the forklift) from January, 1981, until April, 1981, and then again from June, 1981, until July 6, 1981, the date of the accident.

On July 6, 1981, the plaintiff was operating the forklift and was using it to move bales of cardboard into the trailer of a parked truck. Each bale measured about three feet by four feet by six feet, and weighed approximately 1,500 pounds. The plaintiff was moving these bales two at a time, one bale on top of another. Before he was injured, the plaintiff had loaded at least part of a trailer in this way. Assuming that the bales were resting on the forks on their four foot side,[4] the top of the bottom bale was exactly even with the top of the thirty-six inch backrest extension, and the top bale was prevented from falling backward only by the mast uprights behind the backrest, and only for so long as the bale

---

[3] The forklifts that the plaintiff used on these prior occasions had been equipped with overhead guards.

[4] The testimony is not entirely clear on this point, but this inference is most favorable to the plaintiff.

was not raised above the uprights. At this time, the plaintiff knew that the forklift he was using lacked an overhead guard because it had been removed to permit more efficient loading.

Just prior to the accident, the plaintiff was moving two bales into the trailer by carrying the elevated bales up a ramp and into the trailer. On one such maneuver, either the forklift or the bales hit the side of the trailer as the plaintiff attempted to enter it. The plaintiff therefore backed up, put the bales down, and moved the ramp away from the rear of the trailer. Without checking the alignment of the bales, or the position of the top bale, the plaintiff then reelevated the bales by about one and one-half feet and moved the forklift behind the trailer. The plaintiff intended to raise the bales to the level of the trailer floor (about three feet) and to place them in the trailer from that position, without actually entering the trailer. While the forklift was stopped behind the trailer, and the plaintiff was checking its position, the top bale rolled backwards onto the plaintiff, injuring him.[5]

The plaintiff's theory of the case, and the thrust of his presentation to the jury, was that the warnings appearing on the forklift itself, and in the operator's manual, were inadequate because they failed clearly to alert him to the danger presented by the forklift's use. These warnings were located on a red metal plate which was attached directly next to the operator's seat. The information on the plate read, in part, as follows:

"WARNING TO THE OPERATOR

"ONLY TRAINED AND AUTHORIZED PERSONNEL MAY OPERATE THIS LIFT TRUCK. FOR SAFE OPERATION, READ AND FOLLOW THE OPERATOR'S

---

[5]It is unclear from the record whether the forks actually were moving upward when the bale fell. On direct examination, when asked if he was "doing anything with respect to the operation of the forklift" at this time, the plaintiff answered, "No." However, the only other witness to the accident, the plaintiff's uncle, testified that the plaintiff "had the bales *moving up* a short ways and I seen [*sic*] one starting to roll over on him. . . . [I]t was going right over the top of the carriage, the mast hoist there, and it rolled over on his back and shoulders." (Emphasis supplied.)

GUIDE FURNISHED WITH THE TRUCK AND OB-
SERVE THE FOLLOWING WARNINGS: . . . "16. LIFT
TRUCK SHOULD BE EQUIPPED WITH OVERHEAD
GUARD AND LOAD BACKREST EXTENSION. USE
EXTREME CAUTION IF UNABLE TO USE AN OVER-
HEAD GUARD AND BACKREST."

In addition, the operator's manual contained the warnings
set forth in the margin.[6]

In support of his contention that these warnings were inad-
equate, the plaintiff presented an expert witness who testified
that the warnings were insufficiently specific and improperly
placed on the forklift. In this expert's opinion, there should
have been a warning in front of the operator to caution him
not to use the forklift without an overhead guard and a
warning not to stack above the top edge of the load backrest
extension. In addition, the expert stated that there should
have been warnings at the locations where the overhead
guard was bolted which cautioned that operation of the fork-
lift without that safety device would be hazardous.

It was in this evidentiary context that the defendant
sought a directed verdict at the close of the plaintiff's evi-
dence, and again at the close of all the evidence, on the
ground that the defendant "owed no duty to warn [the]
plaintiff, as a matter of law, because the dangers of operating
the forklift without the overhead guard in place were obvi-

---

[6]"Read WARNING and CAUTION information provided on lift trucks
before operating the lift truck.

". . . .

"Use overhead guard and load backrest extension. Be extremely careful
when unable to use an overhead guard or load backrest extension.

". . . .

"When stacking, watch for falling objects. Use load backrest extension
and overhead guard.

". . . .

"Always use overhead guards except where operating conditions do not
permit. Do not operate machine in high stacking areas without overhead
guards.

". . . .

"Use backrest extension when necessary to minimize the possibility of
the load or part of it from falling rearward."

ous." The defendant's motions for directed verdict were de-
nied. After the trial, the defendant sought judgment notwith-
standing the verdict on the ground stated above. This motion
was also denied.[7]

In this court, the defendant has renewed its argument that
it was under no duty to warn the plaintiff because the danger
the plaintiff faced in using the forklift as he did in this case
was obvious. We agree with the defendant's argument.

"A manufacturer of a product has a duty to warn foresee-
able users of dangers in the use of that product of which he
knows or should have known." *Mitchell* v. *Sky Climber, Inc.*,
396 Mass. 629, 631 (1986). However, we have recognized
that, "where the danger presented by a given product is obvi-
ous, no duty to warn [exists] because a warning will not re-
duce the likelihood of injury." *Colter* v. *Barber-Greene Co.*,
403 Mass. 50, 59 (1988). See, e.g., *Slate* v. *Bethlehem Steel
Corp.*, 400 Mass. 378, 382 (1987); *Maldonado* v. *Thomson
Nat'l Press Co.*, 16 Mass. App. Ct. 911, 912-913 (1983),
and cases cited. See also W. Prosser & W. Keeton, Torts §
96, at 686 (5th ed. 1984) ("It is clear that there should be no
liability for failing to warn someone of a risk or hazard
which he appreciated to the same extent as a warning would
have provided").[8]

---

[7]In presenting these motions, the defendant properly preserved all its
rights to raise the issue argued here. See *Michnik-Zilberman* v. *Gordon's
Liquor, Inc.*, 390 Mass. 6, 9 (1983); *Martin* v. *Hall*, 369 Mass. 882, 884-
885 (1976).

[8]Although the jury found that the defendant was not negligent, the par-
ties do not distinguish in their arguments between negligent failure to
warn and failure to warn as a breach of warranty. Proof of the absence of
a warning may, in a given products liability case, support simultaneous
findings of negligence and breach of warranty. See *Kalivas* v. *A.J. Felz
Co.*, 15 Mass. App. Ct. 482, 486-488 (1983); *Wolfe* v. *Ford Motor Co.*, 6
Mass. App. 346, 357-359 (1978), *S.C.*, 386 Mass. 95 (1982). Where a
verdict resting on these separate theories of recovery is returned, it is ap-
propriate to analyze it by reference to negligence precedents. See *Laaperi*
v. *Sears, Roebuck & Co.*, 787 F.2d 726, 728 n.1 (1st Cir. 1986). There-
fore, even though the verdict at issue here is based only on a finding of
breach of warranty, we see no reason in analyzing the verdict not to draw
upon principles concerning the need for warnings that have been articu-
lated in the context of negligence claims.

Several courts, considering factors such as the experience and awareness of the operator, have acknowledged or applied this rule in cases with facts similar to those here, and in cases involving other types of forklift-related accidents. See *Murphy* v. *Eaton, Yale & Towne, Inc.*, 444 F.2d 317, 323-326 (6th Cir. 1971); *Posey* v. *Clark Equip. Co.*, 409 F.2d 560, 563 (7th Cir.), cert. denied, 396 U.S. 940 (1969); *Collins* v. *Hyster Co.*, 174 Ill. App. 3d 972, 979-980 (1988); *Friar* v. *Caterpillar, Inc.*, 529 So. 2d 509, 515 (La. Ct. App. 1988). Cf. *Greeno* v. *Clark Equip. Co.*, 237 F. Supp. 427, 429 (N.D. Ind. 1965) ("Incurring a known and appreciated risk [in the use of a forklift] is likewise a defense"); *Torrogrossa* v. *Towmotor Co.*, 56 A.D.2d 558, 559 (N.Y. Sup. Ct. 1976), aff'd, 44 N.Y.2d 709 (1978) (suggesting that there is no duty to warn an experienced forklift operator that a particular forklift is not equipped with overhead guard).[9] See also Restatement (Second) of Torts § 388(b) (1965).

In this case, the forklift had the capacity to lift heavy loads well above the seventy-three inch height of the mast uprights. The load that the plaintiff was in the process of lifting when he was injured consisted of two heavy and cumbersome bales, only one of which was supported from behind by the load backrest extension. The plaintiff had moved some number of these two-bale loads before the accident. During these operations, the plaintiff knew that he was unprotected by an overhead guard. Thus, it had to have been obvious to the plaintiff (as it would have been to almost anyone) that, if the top bale was elevated above the level of the mast uprights, there was nothing behind the bale to prevent it from falling backwards and onto him.

---

[9] These cases may be compared with *Brandon* v. *Yale & Towne Mfg. Co.*, 220 F. Supp. 855 (E.D. Pa. 1963), aff'd, 342 F.2d 519 (3d Cir. 1965) (large forklift supplied without overhead guard and load backrest and no warnings of any kind given to operator); *Lopez* v. *Precision Papers, Inc.*, 107 A.D.2d 667 (N.Y. Sup. Ct. 1982), aff'd, 67 N.Y.2d 891 (1983) (divided court held that forklift on which overhead guard could be removed might be found to have a design defect).

The fact that the plaintiff was a relatively experienced forklift operator is also important. On various part-time and summer jobs over the course of several years, the plaintiff had acquired a considerable amount of experience operating forklifts. Before he started operating this forklift at Rafter Recycling, the plaintiff's experience was with forklifts that were equipped with overhead guards. Therefore, as he admitted, the plaintiff was aware of the fact that other forklifts were equipped with this important safety feature. In view of these circumstances, the plaintiff doubtless was familiar with the functions of the forklift, as well as with the dangers necessarily attending its use. See *Lopez* v. *Precision Papers, Inc., supra* at 670 (Rubin, J., dissenting); *Mata* v. *Clark Equip. Co.,* 58 Ill. App. 3d 418, 422-423 (1978) (experienced operator deemed to know of dangers present in operation of forklift).

Taking the facts in the light most favorable to the plaintiff, the only explanation for this unfortunate accident that is reasonably permitted by the evidence introduced at trial is as follows. The top bale of the two large and heavy bales that the plaintiff was lifting became unstable (probably after either the bale or the forklift made contact in some way with the edge of the trailer). While the top bale remained in this unstable condition, the plaintiff elevated the forks until the top bale rose above the level of the mast uprights. Not being supported from behind by the load backrest extension (which, at thirty-six inches was only as high as the side of the bottom bale), the top bale fell backwards onto the plaintiff.

This is not a case of a hidden hazard, undetectable by the plaintiff, that a warning would have neutralized. Instead, the hazard (a very heavy, cumbersome, and unsecured object elevated several feet almost directly above the plaintiff), was open, obvious, and unavoidably attendant upon the regular and usual use of the forklift. The danger here was one that no one who thought about it (and certainly no experienced forklift operator) could fail to appreciate. The plaintiff was no less knowledgeable than the defendant about the danger

inherent in using the forklift as he did. See *Fiorentino* v. *A.E. Staley Mfg. Co.*, 11 Mass. App. Ct. 428, 438 (1981). For these reasons, keeping in mind that it was proper to use the forklift without the overhead guard, a warning beyond the warnings given could not have made the danger any more obvious, and, therefore, could not have reduced the likelihood of injury to an experienced operator voluntarily exposing himself to a visible hazard. The plaintiff never came to grips with this problem in his proof at the trial, his case proceeding exclusively on the assumption that there was a duty to warn and that the warnings provided were inadequate. In this respect, the plaintiff's case was critically deficient because the defendant had no duty to warn of an obvious danger.

The judgment is reversed. Judgment is to be entered for the defendant.

*So ordered.*

APPENDIX.