Agnes, A.J.
BACKGROUND
The defendant The Sports Authority has filed a Motion for Partial Summary Judgment under Mass.R.Civ.P. 56 with respect to court one of the plaintiffs complaint in which she alleges that the defendant was negligent because it failed to properly train, warn, or supervise her with regard to a pair of in-line skates she purchased in its store. The skates were manufactured by defendant Koflach Sports and distributed by defendant Atomic Ski USA, Inc.
The essential facts are not in dispute. The skates were purchased by the plaintiff on or about May 20, 1996 in a Sports Authority store in Manhattan, New York. The plaintiff had used in-line skates for a long period of time and viewed herself as an experienced skater. She was aware of the braking system employed in other types of in-line skates in which the rider puts pressure on the brake mechanism which in turn slows down the back wheel. She was aware that the skates in question used a different type of braking system which she read about in the product’s brochure that accompanied the skates before she used them on the street. The injury occurred only a few minutes after the plaintiff began to use her new skates. The plaintiff was skating along a roadway, noticed that she was going downhill, and thought she was going too fast just moments before the collision. The plaintiff suffered injuries when she was unable to stop and hit a parked automobile. According to the plaintiff, she was unable to stop herself because the skates’ “brakes didn’t work.”
When the plaintiff purchased the skates she did not speak to any employee of the Sports Authority, did not review or rely on any promotional material about the product, and did not consult any material about whether the product was suitable for her. Instead, the plaintiff selected the skates from the shelf, opened the box and tried on the skates, returned them to the box, took them to the cash register, and paid for them.
There is no evidence in the record before me that there have been any complaints to the manufacturer, distributor or seller, of defects in or problems with the brakes on these skates, or that any of the defendants had any specific knowledge that the skates were defective in any way.[1]
DISCUSSION
1. Standards applicable to a motion for summary judgment
“Summary judgment is a ‘device to make possible the prompt disposition of controversies on their merits without a trial, if in essence there is no real dispute as to the salient facts or if only a question of law is involved.’ ” Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983) (citations omitted). The function of a motion under Mass.R.Civ.P. 56, is to “pierce the boilerplate of the pleadings and assay the parties’ proof in an effort to determine whether trial is actually required.” Harris v. Harvard Pilgrim Health Care, Inc., 20 F.Sup.2d 143, 146-47 (D.Mass. 1998), citing McIntosh v. Antonino 71 F.3d 29, 33 (1st Cir. 1995). Thus, summary judgment should be granted when there are no genuine issues of material fact and the moving parly is entitled to judgment as a matter of law. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Mass.R.Civ.P. 56(c). Also, summary judgment may be granted against the moving party, and may be granted as to certain issues but not others. See Community Bank v. Dawes, 369 Mass. 550, 553 (1976).
The moving party bears the burden of establishing the absence of a triable issue. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). Once this is satisfied, the burden shifts to the party opposing summary judgment to allege specific facts establishing the existence of a genuine issue or issues of material fact. Id. In assessing whether each party has met its burden, the court is not permitted to weigh the evidence, to determine the credibility of any witnesses or make any findings of fact. Kelly v. Rossi, 395 Mass. 659, 663 (1985). Moreover, “[t]he evidence is ‘considered with an indulgence in the [opposing party’s] favor.’ ” Anthony’s Pier Four v. Crandall Dry Dock Engineering, Inc., 396 Mass. 818, 822 (1986), quoting National Ass’n of Gov’t Employees v. Central Broadcasting Corp., 379 Mass. 220, 231 (1979), cert. denied, 446 U.S. 935 (1980). However, “[a] complete failure of proof concerning an essential element of the non-moving party’s case renders all other facts immaterial.” Kourouvacilis, supra at 711, citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).
In determining whether there are genuine issues of material fact, the court may consider the pleadings, depositions, answers to interrogatories, admissions on file and affidavits. Community National Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The party opposing summary judgment cannot defeat the motion simply by resting on the pleadings and mere assertions that there are disputed facts. LaLonde v. Eissner, 405 Mass. 207, 209 (1989). If the moving party does not bear the burden of proof at trial, it may demonstrate the absence of a genuine issue of material fact by submitting evidence that negates an *722 essential element of the other party’s claim, or by showing that the other party has no reasonable expectation of proving an essential element of its case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991).
“Summary judgment is seldom sought or granted in negligence actions.” Manning v. Nobile, 411 Mass. 382, 388 (1991), quoting Inferrera v. Sudbury, 31 Mass.App.Ct. 96, 103 (1991). This is because negligence claims so often involve disputed questions of fact. Roderick v. Brandy Hill Co., 36 Mass.App.Ct. 948, 949 (1994), citing Mullins v. Pine Manor College, 389 mass. 47, 65 (1983); Solimene v. B. Gravel & Co., KG, 399 Mass. 790, 794 (1987). However, even in negligence actions, summary judgment is appropriate “if no rational view of the evidence permits a finding of negligence.” Roderick, supra at 949.
2. There is no evidence that the defendant The Sports Authority had a duty to train or to warn the plaintiff or its employees about any dangers associated with use of the in-line skates.
In order to prevail in an action based on the theory of negligence, Massachusetts law requires the plaintiff to establish “the existence of an act or omission in violation of a . . . duty owed to the plaintiff by the defendant.” Dinsky v. Framingham, 386 Mass. 801, 804 (1982). The existence of a duty is a question of law for the court the determination of which is based on a consideration of existing values and customs. A manufacturer, supplier or seller of a product has a duty to warn customers or expected users of the product of latent defects or dangers in its normal and intended use. Bavuso v. Caterpillar Indus., Inc., 408 Mass. 694, 699 (1990). There is no duty to warn, however, when the danger associated with the use of a product is obvious, or where the plaintiffs appreciation of the danger is as great as it would be had there been a warning. Id., and cases cited. In-line skates, like a variety of sporting goods, “present obvious dangers to users, but they are not unreasonably dangerous, in part because the very obviousness of the danger puts the user on notice[2] ... A duty to warn is not imposed by law as a mindless ritual. A warning is not required unless ‘the person on whom [the] duty rests has some reason to suppose a warning is needed.’ ” Killeen v. Harmon Grain Products, Inc., 11 Mass.App.Ct. 20, 23-24 (1980).
In the present case, the evidence establishes that neither the manufacturer, the distributor nor the seller had any information about defects in the product’s braking system prior to the date of the plaintiffs purchase. Other than the fact that the product was advertised as one that employed a new type of braking system, there is no evidence that it differed in any way from any other type of in-line skating product. Plaintiff, who was an experienced user of such products, purchased it without any reliance on any statements or representations made by the seller. In view of these facts, there is simply no reason to suppose that if the seller had included a warning about the dangers associated with in-line skating, it would have contributed in any material way to the plaintiffs safety. See Carey v. Lynn Ladder and Scaffolding Co., Inc., 427 Mass. 1003 (1998) (manufacturer of a step ladder had no duty to warn user of danger associated with stepping on the seventh and next-to-last step of the ladder). There is certainly no basis to believe that the defendant The Sports Authority had any duty to warn or to notify the plaintiff about the dangers of using in-line skates because she already appreciated such dangers, and there was no duty with respect to any defects that may exist in the product’s braking system because there is no evidence that the defendant knew or should have known about such a problem. For the same reason, the defendant seller had no duty to train or supervise the plaintiff or its employees in the proper use of the product.
The plaintiffs final argument is that the defendant voluntarily assumed a duty to warn. Massachusetts follows the theory outlined in the Restatement (Second) of Torts §323 (1965) which provides that one who undertakes to render services to another which one should recognize as necessary for the other’s safety or protection is subject to liability from the failure to exercise reasonable care in performing the undertaking if one’s conduct increases the risk of harm to the other person or the harm is suffered because of the other person’s reliance on the performance of the undertaking. See Cottam v. CVS Pharmacy, 436 Mass. 316, 323 & n. 2 (1992). Here, plaintiff concedes she did not rely on any representations or statements made by The Sports Authority in buying the skates. Also, given the lack of knowledge on the Sport’s Authority of any complaints about the skates or any defects in the braking system, it cannot be said that the defendant’s failure to warn increased the plaintiff s risk of harm. ,
ORDER
For the above reasons, the motion for summary judgment with respect to count one of the plaintiffs complaint alleging Negligence against the defendant The Sports Authority is ALLOWED.

The plaintiff suggests that there is a dispute about a materia] fact based on the report of its expert witness, Dr. John Hanst, which is appended to its opposition to the motion for summary judgment. The report describes what are termed “omissions” and “commission” by defendant The Sports Authority including its failure to warn or to train the plaintiff and its employees, but offers no explanation for why the defendant had such a duty. The expert offers an opinion that the description of the product in the accompanying literature was false and misleading because it did not have a “power brake” in the sense in which the expert witness understands that term. There is nothing in this report that indicates that defendant The Sports Authority knew or should have known of any latent defect in the product or that use of the product involved dangers that were not plain and obvious to the plaintiff.

 This court takes judicial notice of the fact that in-line skates, commonly referred to as “roller blades,” are in common use by persons of all ages as a recreational product and that an individual is not required to obtain a license or pass a test to use them. They are propelled by movement of the individual and the force of gravity and not by any other propulsion system such as a motor. They are not heavily regulated (if regulated at all) by national, state or local government. Like bicycles and certain equipment used on the water such as skis, and tubes, their use presents dangers that persons of common intelligence should appreciate. The fact that the manufacturer may have described the article as “inherently dangerous,” see Plaintiffs Memorandum in Opposition at 4-5, does not change the fact that such products are not unreasonably dangerous.