NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

16-P-223                                        Appeals Court

     WILL QUARTERMAN vs. CITY OF SPRINGFIELD & another.[1]


                        No. 16-P-223.

     Hampden.     November 9, 2016. - March 29, 2017.

          Present:  Kafker, C.J., Kinder, & Lemire, JJ.


Alcoholic Liquors, License, Local licensing authority.  Anti-
     Discrimination Law, Race, Damages, Attorney's fees.
     Practice, Civil, Judgment notwithstanding verdict, Motion
     to amend, Instructions to jury.  Judgment, Amendment.
     Damages, Loss of profits, Attorney's fees.


     Civil action commenced in the Superior Court Department on
August 14, 2008.

     The case was tried before Daniel A. Ford, J., an award of
attorney's fees was ordered by him, and motions for judgment
notwithstanding the verdict and to alter or amend the judgment
were heard by him.


     Leonard H. Kesten for the plaintiff.
     Edward M. Pikula, City Solicitor, for the defendants.


     KINDER, J.  On April 13, 2006, the board of license

commissioners (board) of the city of Springfield (city) denied

---

     [1] Peter Sygnator, individually and as chairman of the board
of license commissioners.

plaintiff Will Quarterman's application for a liquor license. Quarterman, an African American, brought this action against board chairman Peter Sygnator and the city, claiming that denial of the application was discriminatory and in retaliation for Quarterman's earlier filing of a complaint with the Massachusetts Commission Against Discrimination (MCAD). Ultimately, a Superior Court jury rejected the claim of racial discrimination, but found that the city, through the actions of former Mayor Charles Ryan, had retaliated against Quarterman in violation of G. L. c. 151B, § 4(4).[2]  The jury awarded damages of $250,000 in lost profits and $100,000 for emotional distress.

The city challenged the verdict in posttrial motions for judgment nothwithstanding the verdict (judgment n.o.v.), to alter or amend the judgment, and for a new trial.  Principally, the city argued that the evidence of retaliation and damages was insufficient.  In a comprehensive written decision, the trial judge denied the motions as to liability for retaliation, but allowed them, in part, as to damages.  The judge concluded that there was evidentiary support for the award of $100,000 for emotional distress.  However, he found that the evidence of lost profits was "lacking in substance."  He also reasoned that

---

[2] The jury found that neither Sygnator nor Mayor Ryan discriminated against Quarterman, and that Sygnator did not retaliate against him.  Mayor Ryan is not a named defendant in this action.

Quarterman had failed to establish standing to claim lost profits because the profits were not direct and personal to him. Accordingly, the judge reduced the damages from $350,000 to $100,000. Quarterman challenges that ruling on appeal.

On cross-appeal, the city argues that (1) the motions for judgment n.o.v. and to alter or amend the judgment should have been allowed in their entirety; (2) the judge erred in refusing to instruct the jury regarding the mayor's right to freedom of speech; (3) the judge abused his discretion in denying a motion in limine to admit findings in a related Federal case; and (4) the judge abused his discretion in awarding attorney's fees.

For the reasons that follow, we affirm the order denying the motion for judgment n.o.v. as to liability for retaliation, and affirm the order to alter or amend the judgment by eliminating damages for lost profits. We also conclude that the jury were properly instructed, and that the judge did not abuse his discretion with respect to the motion in limine and the award of attorney's fees.[3]

Background. We summarize the facts in the light most favorable to Quarterman, reserving some details for our discussion. See Abramian v. President & Fellows of Harvard

---

[3] In light of our ruling affirming the allowance of the motion to alter or amend the judgment, we need not address the motion for new trial, which was allowed only on the condition that the motion to amend or alter judgment was reversed. See Mass.R.Civ.P. 50(c), as amended, 428 Mass. 1402 (1998).

College, 432 Mass. 107, 110 (2000).  Quarterman had been in the bar business in the city for several years.  In September, 2002, he opened a nightclub, Logan's Lounge, after obtaining a liquor license from the board.  The business operated without incident until April, 2004, when a brawl and shooting occurred there during an afterhours party.  Although Quarterman was not present at the time, police reports suggested that he was.  Immediately following the shooting, Quarterman voluntarily closed Logan's Lounge.  Shortly thereafter, the business was evicted from the property and closed permanently.

In August, 2004, Quarterman and a new business partner, Paul Ramesh, applied to the board to transfer the liquor license to a new club called Halo that they planned to open in the entertainment district of the city.  Despite Quarterman's repeated requests for a hearing on the application, one was not convened until March, 2005.  In the intervening months, Sygnator raised multiple concerns about the interior design of the club, which Quarterman addressed.  There was also a concern about the proposed venue, which had previously been occupied by a nightclub called Asylum.  Asylum had posed problems for the city because of large crowds, excessive noise, vandalism, illegal drug use, and violence.

On March 2, 2005, Quarterman filed the first of two complaints with the MCAD.  He alleged that the city, the mayor,

and Sygnator discriminated against him on the basis of race by failing to schedule a vote on his application to transfer the liquor license. Meanwhile, the board held a hearing and voted three to two to deny the application. The city, through its attorney, suggested to Quarterman and Ramesh that they address the concerns raised by the board and apply for a new license.

In January, 2006, Quarterman and Ramesh applied for a new liquor license in the name of their new corporation, Exile Entertainment, Inc. The hearing on the application was delayed from March 9, 2006, to April 13, 2006, at the mayor's request so that he could attend. At the hearing, the mayor, who had never previously appeared before the board, argued against the application. He also recruited other witnesses to speak in opposition to the application, including the police commissioner and a representative of American International College. In support of his opposition, the mayor cited the shooting at Logan's Lounge, suggesting that Quarterman had been present when it had occurred. The board voted three to one to deny the application. At least one commissioner changed his vote based on the mayor's opposition.

By contrast, immediately following the vote denying Exile a liquor license, the board voted to approve a liquor license for another nightclub in the entertainment district, the Alumni Club. The mayor spoke in favor of that application.

After issuance of the board's final written decision denying his application, Quarterman filed a second complaint with the MCAD. He again alleged that the city and Sygnator discriminated against him on the basis of race and engaged in retaliation. Following a finding of probable cause by the MCAD, Quarterman removed the complaint to Superior Court by filing this action.

Discussion. Although the judge's memorandum of decision did not distinguish between the relief sought by the city in its motion for judgment n.o.v. and its motion to alter or amend the judgment, the motions addressed different issues. The city clarified the relief sought by each motion in its joint memorandum in support of all posttrial motions: "The [c]ity has moved, pursuant to Massachusetts Rule of Civil Procedure Rule 50(b), [as amended, 428 Mass. 1402 (1998),] for judgment in its favor notwithstanding the verdict as to liability for retaliation; moved, pursuant to Massachusetts Rule of Civil Procedure Rule 59(e), [365 Mass. 827 (1974),] to alter or amend the judgment by deducting the amount of damages awarded for lost profits; and moved, pursuant to Massachusetts Rule of Civil Procedure Rule 59(a), [365 Mass. 827 (1974),] for a new trial on the issue of liability for retaliation attributed to Mayor Ryan." Thus, the city sought to address liability with its motion for judgment n.o.v. and motion for new trial, and damages

with its motion to alter or amend the judgment.  While the judge's decision and some of the pleadings conflate these issues, we address liability and damages separately as the city framed them at the outset.

1.  <u>Motion for judgment n.o.v. regarding liability for retaliation</u>.  Relief is appropriate under a motion for judgment n.o.v. "[o]nly when no rational view of the evidence warrants a finding [for the nonmoving party] . . . ."  <u>Mullins</u> v. <u>Pine Manor College</u>, 389 Mass. 47, 56 (1983), quoting from <u>Zezuski</u> v. <u>Jenny Mfg. Co</u>., 363 Mass. 324, 327 (1973).  See J.W. Smith & H.B. Zobel, Rules Practice § 50.13, at 150 (2007).  Accordingly, in analyzing this motion we draw every reasonable inference in favor of Quarterman "without weighing the credibility of the witnesses or otherwise considering the weight of the evidence . . . ."  <u>Bavuso</u> v. <u>Caterpillar Industrial, Inc</u>., 408 Mass. 694, 695 n.1 (1990), quoting from <u>McNamara</u> v. <u>Honeyman</u>, 406 Mass. 43, 45 (1989).

General Laws c. 151B, § 4(4), as inserted by St. 1946, c. 368, § 4(4), makes it unlawful "[f]or any person . . . to . . . discriminate against any person because he has opposed any practices forbidden under this chapter or because he has filed a complaint . . . ."  "Retaliation is a separate and independent cause of action" from a claim of discrimination under G. L. c. 151B, <u>Abramian</u>, 432 Mass. at 121, but the basic framework of

the claim remains the same.  First, "the plaintiff bears the initial burden of establishing a prima facie case"; second, "the burden shifts to the [defendant] to articulate a legitimate reason for its actions"; and third, "the burden shifts back to the [plaintiff] to show that the [defendant's] asserted reason was not the true reason, but rather a pretext."  Handrahan v. Red Roof Inns, Inc., 43 Mass. App. Ct. 13, 14-15 (1997).  To establish a prima facie case of retaliation, Quarterman must prove that he "reasonably and in good faith believed that the [city] was engaged in wrongful discrimination, that [he] acted reasonably in response to [his] belief, and that the [city's] desire to retaliate against [him] was a determinative factor in its decision" to deny him a liquor license.  Tate v. Department of Mental Health, 419 Mass. 356, 364 (1995).  See Abramian, supra.

The city does not dispute that Quarterman believed the city discriminated against him or that he acted reasonably in response to that belief.  Rather, the city argues that there was insufficient evidence for the jury to conclude that denial of the liquor license was caused by the city through the actions of the mayor.  Further, the city contends that Quarterman failed to adequately rebut evidence that the license was denied for a legitimate, nonretaliatory reason.  Drawing all reasonable inferences in favor of Quarterman, we agree with the judge's

assessment that the evidence was sufficient to prove that it was more likely than not that Quarterman "suffered harm as a result of Mayor Ryan's action."

The jury could have found that the 2006 liquor license application addressed the concerns the board had expressed at the 2005 hearing. The capacity of the club had been decreased from 700 to 400, security had been increased, parking was added, and Quarterman's role in the business had been reduced. Considering evidence of these modifications in the light most favorable to Quarterman, the jury could reasonably have concluded that, but for the mayor's opposition, the application would have been approved.

There was also evidence from which the jury could have inferred retaliatory animus. After Quarterman filed the MCAD complaint naming the mayor as a defendant, the mayor took an unusual interest in Quarterman's liquor license application. He had never before appeared to testify against an applicant, he requested and was granted a postponement of the hearing to ensure his attendance, and he recruited other witnesses to testify against the application. He spoke forcefully against the application at the hearing, persuading at least one board member to vote against it.

According to the city, Quarterman's application was denied for legitimate nonretaliatory reasons -- the board's concerns

about the location and size of the establishment, prior problems with Asylum at the same location, and Quarterman's troubled history at Logan's Lounge.  But, as set forth above, there was evidence that those issues had been previously raised and, in large part, addressed by Quarterman, such that the jury could have reasonably concluded the stated reasons were a pretext.

Reasonable minds might disagree whether the mayor's intent in opposing the liquor license was to retaliate against Quarterman, or to protect the city and its residents.  But, in analyzing a motion for judgment n.o.v., we do not weigh the evidence.  Simply put, when considered in a light most favorable to Quarterman, the evidence was sufficient for the jury to conclude that by filing an MCAD complaint Quarterman engaged in legally protected conduct, that he suffered an adverse action in the denial of the liquor license, and that there was a causal connection between the two.  See Ritchie v. Department of State Police, 60 Mass. App. Ct. 655, 664 (2004).  Accordingly, there was no error in the denial of the motion for judgment n.o.v. as to liability for retaliation.

2.  Motion to alter or amend the judgment as to damages. The judge allowed the city's motion to alter or amend the judgment in part, by reducing the damages from $350,000 to $100,000.  In doing so, he concluded that the evidence supported

an award of $100,000 for emotional distress damages, but not an award of $250,000 for lost profits damages. We agree.

Under Mass.R.Civ.P. 59(e), a motion to alter or amend "'is designed for . . . situations' where the judgment is incorrect because it lacks both legal and factual justification." Shawmut Community Bank, N.A. v. Zagami, 419 Mass. 220, 223 (1994), quoting from Page v. New England Tel. & Tel. Co., 383 Mass. 250, 252 (1981). In such circumstances, "the judge [is] not 'called upon to find different facts from the evidence, but merely to correct the judgment by striking out that portion which [is] erroneous because it lack[s] both legal and factual justification.'" Page v. New Eng. Tel. & Tel. Co., supra, quoting from Mumma v. Reading Co., 247 F. Supp. 252, 260 (E.D. Pa. 1965) (affirming reduction of jury's award of $10,000 as nominal damages to $1 on a contract claim in the "absence of a showing of pecuniary loss"). See Spring v. Geriatric Authy. of Holyoke, 394 Mass. 274, 290-291 (1985) (affirming reduction of jury award from $50,000 to nominal damages of $1 on a breach of contract claim where "no actual damages were proved at trial").

We review the order allowing the motion to alter or amend for an abuse of discretion. See Gannett v. Shulman, 74 Mass. App. Ct. 606, 615 (2009). A judge abuses his discretion only when he makes "a clear error of judgment in weighing" the relevant factors "such that the decision falls outside the range

of reasonable alternatives."  See Hoegen v. Hoegen, 89 Mass. App. Ct. 6, 9 (2016), quoting from L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014).

We first address whether lost profits are a proper element of damages for a claim of retaliation.  "In the context of . . . G. L. c. 151B, compensatory damages are those damages which 'make[] the aggrieved party whole,' . . . including those which are the 'natural and probable consequences' of the illegal conduct."  Conway v. Electro Switch Corp., 402 Mass. 385, 388 (1988), quoting from Bournewood Hosp., Inc. v. Massachusetts Commn. Against Discrimination, 371 Mass. 303, 315-316 (1976). Typically, compensatory damages in such an action can be awarded for emotional distress, see Stonehill College v. Massachusetts Commn. Against Discrimination, 441 Mass. 549, 570-577 (2004); back pay, see DeRoche v. Massachusetts Commn. Against Discrimination, 447 Mass. 1, 15-16 (2006); front pay, see Haddad v. Wal-Mart Stores, Inc. (No. 1), 455 Mass. 91, 102-106 (2009); and lost pension benefits, see Ventresco v. Liberty Mut. Ins. Co., 55 Mass. App. Ct. 201, 209-211 (2002).  Compensatory damages also can be awarded based on other damages incurred as a "direct consequence" of the action.  Massachusetts Commn. Against Discrimination v. Franzaroli, 357 Mass. 112, 115 (1970).

Lost profits are the usual measure of damages in cases involving business torts, see Jet Spray Cooler, Inc. v.

Crampton, 377 Mass. 159, 169 (1979), and are typically awarded
to businesses and corporations injured by another's conduct.
See, e.g., Eldim, Inc. v. Mullen, 47 Mass. App. Ct. 125, 129-130
(1999).

Although claims for lost profits are not common in cases
alleging discrimination and retaliation under G. L. c. 151B, we
are aware of no authority prohibiting such claims as a potential
remedy and we see no reason to preclude them as a matter of law.
The provisions of c. 151B are to be "construed liberally for the
accomplishment of its purposes." G. L. c. 151B, § 9, as amended
by St. 2002, c. 223, § 2. The clear legislative purpose of
c. 151B is "to afford victims of discrimination the legal remedy
of compensatory damages." Conway, supra at 387. Bearing in
mind these principles, we conclude that the natural and probable
consequence of retaliation under c. 151B can, if supported by
the evidence, include lost profits.[4]

Having concluded that lost profits damages are recoverable
under c. 151B, we turn to the evidence supporting Quarterman's
claim of lost profits. Quarterman was the only witness to
testify about lost profits. Despite the fact that Halo never

_____

[4] Other jurisdictions have held that lost profits damages
are available in analogous circumstances. See Thompson v. Hales
Corners, 340 N.W.2d 704, 716 (Wis. 1983) (affirming jury award
of lost profits for civil rights violation); Johnson v. Alaska
State Dept. of Fish & Game, 836 P.2d 896, 910-913 (Alaska 1991)
(lost profit damages available as remedy for discriminatory
restrictions on salmon fishing).

opened, he estimated that the business would have earned a profit of $700,000 to $800,000 in the first year of operation. He based this opinion on his prior experience as a bar owner, his knowledge of the profits from other clubs owned by Ramesh, and the success of a sports bar in the entertainment district.[5] There was no evidence regarding startup costs, retained earnings for improvements, or the distribution of corporate profits to the shareholders. Quarterman's opinions were not supported by documentary evidence. No shareholder agreement, employment agreement, business records, or tax returns were offered. While Quarterman was "not required to prove [his] lost profits with mathematical precision," lost profit damages must be proved "to a reasonable degree of certainty." Herbert A. Sullivan, Inc. v. Utica Mut. Ins. Co., 439 Mass. 387, 413 (2003) (quotations omitted). Here, the judge found that "Quarterman's testimony about the alleged loss of profits was lacking in substance." Based on our review of the record, this determination was within the range of reasonable alternatives and, therefore, not an abuse of discretion.

---

[5] According to Quarterman, Logan's Lounge made a $4,000 to $7,000 profit each Friday night, and a little less on Saturday. He testified that Sam's Sports Bar, which had a smaller capacity and served food, earned a profit of approximately $20,000 per week. He also testified that Ramesh's bar, the Zone, earned a profit of approximately $20,000 per week.

In considering the posttrial motions, the judge also concluded that, based on the evidence at trial, Quarterman lacked standing to claim lost profits.  As a general rule, a shareholder does not have standing to sue to redress an injury to the corporation in which he holds an interest.  See Pagan v. Calderon, 448 F.3d 16, 28 (1st Cir. 2005).  Here, it is undisputed that Quarterman applied for the liquor license in the name of Exile Entertainment, Inc., the closely held corporation in which he had a thirty percent ownership interest.[6]  Had Halo opened, it was Exile that would have operated the business and benefitted from any profits.  According to the city, Quarterman lacked standing because his claim to lost profits was merely derivative of Exile's corporate claim.  Quarterman argued that he had standing because the damages he suffered were direct, personal, and supported by adequate proof.  See id. at 29 (shareholders did not have standing because they failed to allege "a particularized, nonderivative injury").  In addressing this issue, the judge reasoned that:

> "If Quarterman and Ramesh, as directors of the corporation, had testified that they would have voted to declare a dividend and that Exile would have distributed all its profits to the shareholders, the jury would have been free to assess that testimony and, if they believed it, would have been warranted in concluding that Quarterman had indeed suffered a loss of 'profits,' in the form of a lost dividend."

---

[6] Ramesh owned the other seventy percent.

Because there was no such evidence, the judge ruled that Quarterman had failed to prove the direct and personal injury necessary to establish standing to claim lost profit damages. Based on the record before us, we cannot say that this was an abuse of discretion. Accordingly, we affirm so much of the order allowing the motion to alter or amend the judgment as eliminated the lost profits damages.[7]

3. <u>Jury instruction</u>. The city argues that the judge erred in refusing to instruct the jury regarding the mayor's freedom of political speech. "We review objections to jury instructions to determine if there was any error, and, if so, whether the error affected the substantial rights of the objecting party." <u>Dos Santos</u> v. <u>Coleta</u>, 465 Mass. 148, 153-154 (2013), quoting from <u>Hopkins</u> v. <u>Medeiros</u>, 48 Mass. App. Ct.600, 611 (2000).

The city requested the following instruction:

"As the Chief Executive Officer of the [c]ity, a [m]ayor is entitled to express the views of his administration and to state what political judgments seemed appropriate so long as they were not defamatory. 'The interest in remedying discrimination is weighty, but not so weighty as to justify a restriction on core political speech.' <u>Bain</u> v. <u>Springfield</u>, 424 Mass. 758, 766 (1997)."

In declining to give the instruction as requested, the judge stated, "I just don't think it's necessary. I think everyone

---

[7] The judge concluded that there was no impediment to the jury's award of $100,000 in emotional distress damages because those damages were direct and personal to Quarterman. But for the city's argument on liability, it does not challenge that conclusion.

agrees that the mayor is entitled to express his views and state what his judgments are. I don't think that's in dispute. The issue is, in doing so did he discriminate?" We agree.

The language of the proposed instruction would have, by implication, suggested to the jury that the right to speak freely is superior to the right to be free from discrimination and retaliation. That is not the law. "In outlawing retaliation . . . the Massachusetts Legislature prohibited a type of conduct that can, and often does, include speech." Dixon v. International Bhd. of Police Officers, 504 F.3d 73, 83 (1st Cir. 2007). Here, the jury were accurately instructed that the city, through its representatives, was entitled to make its own policy, business, and governmental judgments. But, it could not lawfully deny Quarterman a liquor license simply because he filed a complaint with the MCAD. Those instructions were sufficient. There was no error in the denial of the city's proposed instruction.[8]

4. Motion in limine. In 2007, Quarterman filed an action against the city in Federal Court alleging discrimination in

---

[8] The city's reliance on certain language in Bain, supra at 766, is misplaced. There the Supreme Judicial Court held that a mayor had a right to express to the local newspaper that claims of discrimination and retaliation against him were meritless, and that such statements were not retaliatory. Here the mayor was not merely defending himself against accusations in the newspaper, but urging the board, an agency of the government that he headed, to take action that would adversely affect Quarterman.

connection with the denial of his 2005 liquor license application. Following a bench trial in 2010, judgment entered for the defendants. Prior to trial in the instant case, the city filed a motion in limine seeking to prohibit any evidence of retaliation, arguing that the issue had already been litigated in the Federal case. The city appeals the denial of that motion.

We need not dwell on this argument because another panel of this court has already done so. The motion in limine was previously allowed by a different Superior Court judge who then dismissed the case sua sponte. The dismissal was reversed by a panel of this court in a memorandum and order pursuant to rule 1:28, and remanded for further proceedings. See Quarterman v. Springfield, 83 Mass. App. Ct. 1103 (2012). In short, the panel held that the doctrine of issue preclusion did not apply because the issues in the Federal and State cases were not the same. "[T]he issue in the Federal Court litigation was whether the city displayed racial animus against Quarterman in denying his 2005 liquor license transfer request; the issue raised in the Superior Court litigation is whether the city had racial animus and retaliated against Quarterman a year later, in 2006 . . . ."

Ibid. The city has given us no reason to revisit our resolution
of that issue.[9]

5. Attorney's fees. Following a nonevidentiary hearing
and consideration of multiple affidavits regarding attorney's
fees, the judge, in a thorough memorandum and order, awarded
Quarterman $169,002.41 in attorney's fees and costs pursuant to
G. L. c. 151B, § 9. Based on the arguments advanced in its
posttrial motions, the city requested a reduction in that award.
The judge denied the motion, concluding that, even though he had
eliminated lost profits damages, "[t]he time spent on proving
the alleged loss of profits cannot be separated from the time
spent on proving other aspects of the case, as those hours were
inextricably intertwined." On appeal, the city argues that the
reduction in damages should result in a decrease in the
attorney's fees. We disagree.

"The amount of a reasonable attorney's fee . . . is largely
discretionary with the judge, who is in the best position to
determine how much time was reasonably spent on a case, and the
fair value of the attorney's services." Fontaine v. Ebtec

_____

[9] To the extent that this section of the city's brief claims
error in the failure to admit the MCAD findings at trial, the
fleeting reference to the issue provides an insufficient basis
for us to reasonably consider the claim. See Howe v. Tarvezian,
73 Mass. App. Ct. 10, 12 (2008) ("Contentions lacking legal
authority or reasoned explanation fall short of [appellate]
argument"); Mass.R.A.P. 16(a)(4), as amended, 367 Mass 921
(1975).

Corp., 415 Mass. 309, 324 (1993). In general, when only some claims are successful, "no fee should be awarded for services [employed pursuing an] unsuccessful claim, unless the court finds that the unsuccessful claims are sufficiently interconnected with the claims on which [t]he plaintiff prevails." Killeen v. Westban Hotel Venture, LP, 69 Mass. App. Ct. 784, 792-793 (2007) (quotations and citations omitted). Here, the judge concluded that the time expended on the claim of lost profits damages was "inextricably intertwined" with the other claims. We discern no abuse of discretion in that order.

Conclusion. We affirm the order denying the motion for judgment n.o.v. as to liability for retaliation, and affirm the order allowing the motion to alter or amend the judgment by eliminating the award of $250,000 for lost profits. The judgment awarding $100,000 in emotional distress damages is affirmed. We also affirm the award of attorney's fees.

                              So ordered.