## JAMES V. VENTRESCO vs. LIBERTY MUTUAL INSURANCE COMPANY.

No. 00-P-1096.

Suffolk. April 12, 2002. - June 13, 2002.

Present: ARMSTRONG, C.J., MASON, & GRASSO, JJ.

*Anti-Discrimination Law,* Age. *Employment,* Discrimination. *Practice, Civil,* Instructions to jury, Burden of proof, Interest. *Pension. Damages,* Future damages, Interest. *Interest.*

In a civil action alleging age discrimination, the judge did not err in instructing the jury that the plaintiff was entitled to prevail if he proved "pretext," where she also told them that, by pretext, she meant pretext for discrimination, and thus, when read as a whole, the instructions were adequate to inform the jury that the plaintiff was required to prove that the defendant had acted with a discriminatory motive or intent. [205-209]

The evidence in a civil action alleging age discrimination was sufficient to support the jury's award of lost pension benefits, and the award of lost pension benefits was not inconsistent with the award of front pay. [209-211]

This court modified the judgment in a civil action alleging age discrimination to provide that prejudgment interest would be allowed only on those portions of the judgment representing amounts for back pay and emotional distress damages. [211]

CIVIL ACTION commenced in the Superior Court Department on March 19, 1998.

The case was tried before *Diane M. Kottmyer,* J., and motions for judgment notwithstanding the verdict and for attorney's fees were heard by her.

*Richard W. Renehan (Deborah H. DosSantos* with him) for the defendant.

*Robert R. Berluti* for the plaintiff.

MASON, J. The plaintiff, James V. Ventresco, brought this action in March, 1998, alleging that the defendant, Liberty Mutual Insurance Company (Liberty), had laid him off from his employment with Liberty in September, 1996, because of his age, in

violation of G. L. c. 151B, § 4. The jury returned a verdict for the plaintiff and awarded him $201,100 in compensatory damages, including $21,500 in back pay, $14,400 in front pay, $140,200 in lost pension benefits and $25,000 for emotional distress. The jury further determined that because Liberty had acted with knowledge or reason to know it was violating the law against age discrimination, their award of compensatory damages therefore should be doubled to $402,200. See G. L. c. 151B, § 9. Acting on Liberty's motion for judgment notwithstanding the verdict or for a new trial, the judge ordered that a new trial would be held unless the plaintiff accepted a remittitur of $150,992, to which the plaintiff agreed.[1] The plaintiff moved for attorney's fees and costs and received an award of $95,000 and $1,903, respectively. A final judgment then entered accordingly.

On appeal from the judgment, Liberty claims that (1) a new trial is necessary because the judge erred in instructing the jury that they must find for the plaintiff if he simply proved "pretext," relieving him of his burden of proving discrimination; (2) the award of lost pension benefits was improper because there was insufficient evidence that, but for his layoff, the plaintiff would have remained employed at Liberty until he was sixty-five years old and, in any event, any such finding by the jury was inconsistent with their award of only $14,400 in front pay; and (3) the plaintiff was improperly allowed prejudgment interest on the entire award, including the portions for front pay and lost pension benefits. We agree that prejudgment interest should not have been allowed on the portions of the jury's award for front pay and lost pension benefits, and accordingly, we order that the judgment be modified to provide prejudgment interest only on those portions of the judgment representing amounts for back pay and emotional distress damages. We otherwise affirm.

*Background facts.* The plaintiff was initially hired by Liberty

---

[1] The judge calculated the remittitur by reducing the amount awarded for lost pension benefits from $140,200 to $72,604, to reflect the present value of such lost benefits, and also the amount awarded for back pay from $21,500 to $13,600, to reflect the plaintiff's evidence, and then multiplying the total amount of such reductions ($67,596 + $7,900 = $75,496) by two, the number by which the jury had multiplied their award.

as an employee in its mailroom in the fall of 1963, which was shortly after the plaintiff had completed high school. The plaintiff left his employment in 1965, but then he returned in November, 1972, after he had completed college and service in the United States Army. The plaintiff thereafter continued as an employee of Liberty until his layoff in September, 1996.

In February or March, 1973, the plaintiff was offered and accepted a position as a production assistant in Liberty's advertising and public relations department. He was subsequently promoted to the position of production manager and, ultimately, in 1983 to the position of director of production services. As director of production services, the plaintiff was responsible for overseeing and coordinating the department's print production projects, including the company's annual report and also its periodic newsletters and magazines. He was also responsible for tracking progress on these projects and monitoring the expenses incurred in completing them. The plaintiff reported directly to Whitney Lancaster, who was the head of the advertising and public relations department.

The plaintiff regularly received annual performance evaluations while he was employed as director of production services. For each of the years ending January, 1993, through January, 1996, the plaintiff received an over-all rating of "meets expectations" on his then-current performance evaluation, which was in the middle of the scale of possible ratings. The plaintiff never received any warning that his job performance was unsatisfactory even though, throughout this period, Liberty had a written progressive discipline policy in effect providing that employees should be given such a warning and then placed on probation prior to being discharged for such unsatisfactory job performance.

In January, 1996, Lancaster was replaced by Steven Sullivan as the head of the advertising and public relations department which, shortly thereafter, was renamed the Liberty communication services (LCS) department. At the time he was hired, Sullivan was told by Liberty's chief executive officer, Gary Countryman, that the department was "somewhat dysfunctional" and not well-regarded by the other operating departments within Liberty, and that Countryman was looking to him to reorganize

the department and turn it into a "world-class communications department."

Sullivan promptly met with all the managers in the department, including the plaintiff, and asked them what they thought their job functions were and what they thought they were doing. Sullivan testified that, as a result of his interview with the plaintiff, he obtained the impression that the plaintiff "didn't have a lot to do" principally because his production duties had declined, and that he was performing a lot of tasks, such as scheduling vacations for secretaries, which should have been performed by other people. Sullivan also testified that he was struck by the fact that the plaintiff seemed content to view his job as a meaningful job, even though it did not appear to Sullivan to have substance.

At or about this same time, Sullivan retained an outside consultant, Walter Pile, to advise him with respect to reorganizing the LCS department. Sullivan met with Pile in late January or early February and specifically told him that the plaintiff's position was "outside the scope of [the department's] assignment" because "the production director title . . . no longer really applied relative to [the plaintiff's] current responsibilities."

Sullivan thereafter had periodic discussions with Bruce Anderson, who was vice-president and manager of human resource services at Liberty, regarding his plans for reorganizing the LCS department. Sullivan told Anderson during these discussions that he doubted that the plaintiff, who by this time was fifty-one years old, or another employee, Richard Kallio, who was sixty-one years old, would retain positions in the reorganized department due to their poor job performance.

On July 1, 1996, Pile sent Sullivan a letter outlining their joint recommendations for reorganizing the department and the reasons for the recommendations. At Sullivan's request, Pile included in this letter a statement that, as a result of the proposed reorganization, "long-standing under performers will be outplaced, sending an important, positive message to [strategic business unit] clients as well as the LCS staff."

Shortly thereafter, on July 17, 1996, Sullivan met with the plaintiff and told him that his position was being eliminated. Sullivan further told the plaintiff at this time that two new posi-

tions were being created, including one that would serve an accounting function and one that would serve a trafficking/production function, but that the company would be hiring from the outside to fill those positions. Sullivan also told the plaintiff that he would be allowed sixty days to find another position within Liberty but that, if he failed to do so, his employment would be terminated and he would receive Liberty's thirty-nine week severance package.

The plaintiff thereafter did attempt to obtain another position within Liberty but was unable to do so. His employment with Liberty was accordingly terminated on September 16, 1996. Kallio's position was also eliminated at this same time and he retired.

Liberty eventually filled the new accounting position with a man who was thirty-five years old and the new trafficking/production position with a woman who was twenty-nine years old. Liberty also created a new operations manager position within the LCS department and appointed to the position a woman who was thirty-five years old and whose prior position had also been eliminated in the reorganization of the department.

Following the termination of his employment with Liberty, the plaintiff was employed first as a senior production manager by CFI Design Group and then, starting in July, 1998, as a project manager by Fidelity Investments (Fidelity). While the plaintiff's basic annual salary at Fidelity was approximately $7,200 less than his salary had been at Liberty, the plaintiff was eligible to receive annual bonuses at Fidelity of up to fifteen percent of his salary. The plaintiff could also qualify for pension benefits at Fidelity but only up to $300 per month at age sixty-five. At the time he left his employment at Liberty, the plaintiff was fully vested in Liberty's pension plan and, whereas he was then entitled to a monthly payment of $1,122 at age sixty-five, he would have been entitled to a payment of approximately $2,330 per month if he had remained at Liberty until age sixty-five. Accordingly, the plaintiff lost substantial pension benefits as a result of the termination of his employment with Liberty, which he could not recover at Fidelity.

1. *Jury instructions.* Citing *Abramian* v. *President & Fellows of Harvard College*, 432 Mass. 107 (2000), Liberty claims the

judge erred in instructing the jury that the plaintiff was entitled to prevail if he proved "pretext," rather than discrimination. In *Abramian*, the Supreme Judicial Court held that, in an indirect evidence case such as the present one,[2] proof that the reason the employer has articulated for its action is false or a pretext may permit, but does not require, the fact finder to infer discrimination. *Id.* at 117-118. Hence, it is error for the judge to instruct the jury that, if they find that the employer's articulated reason for its action is a pretext, then they are required (as distinct from permitted) to find that the employer engaged in discrimination. *Id.* at 118.

It is well settled, however, that "reversible error will not be found merely by 'consideration of [a] fragment [of an instruction] which may be open to criticism.' " *Lipchitz* v. *Raytheon Co.*, 434 Mass. 493, 507 (2001), quoting from *Haven* v. *Brimfield*, 345 Mass. 529, 533 (1963). Rather, "[t]he trial judge maintains discretion in charging the jury, and a charge is to be read as a whole in determining whether the jury were properly instructed." *Sarvis* v. *Boston Safe Deposit & Trust Co.*, 47 Mass. App. Ct. 86, 100 (1999), citing *O'Connor* v. *Raymark Indus., Inc.*, 401 Mass. 586, 592 (1988).

In the present case, the judge submitted four special questions to the jury, only the first of which dealt with liability.[3] That question was, "Did the defendant, Liberty Mutual Insurance Company . . . discriminate against the plaintiff, James V. Ventresco . . . by terminating his employment because of age?"

The judge drew her instructions with respect to this question primarily from the order of proof originally described in *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792 (1973), and

---

[2] A plaintiff may prove discrimination either by direct evidence, such as evidence that the decision maker made statements related to the decisional process itself indicating a discriminatory motive, see *Wynn & Wynn, P.C.* v. *Massachusetts Commn. Against Discrimination*, 431 Mass. 655, 667 (2000), or indirectly, by circumstantial evidence, such as evidence that the reasons the employer has articulated for its action are false, or could not be the real reasons for the employer's action. See *Matthews* v. *Ocean Spray Cranberries, Inc.*, 426 Mass. 122, 128 (1997).

[3] The additional special questions dealt with damages, Liberty's knowledge or reason to know that its conduct violated the law against age discrimination, and the plaintiff's compliance with the statute of limitations for bringing claims under G. L. c. 151B.

adopted by the Supreme Judicial Court in *Wheelock College* v. *Massachusetts Commn. Against Discrimination*, 371 Mass. 130 (1976). Thus, the judge instructed the jury that, to prevail on his claim of age discrimination, the plaintiff was required to prove by a preponderance of the evidence that (1) he is a member of the protected class, i.e., over forty years of age (see G. L. c. 151B, §§ 1, 4); (2) he was performing his job at an acceptable level of performance; (3) his employment was nevertheless terminated; and (4) Liberty either did not treat age neutrally in deciding to eliminate his position or, alternatively, he was qualified for another position which was given to a younger person with similar or inferior qualifications and he did not apply for the position because Liberty, by acts or deeds, indicated to him that he would not be considered for the position.

The judge then further instructed the jury that, since Liberty had produced a nondiscriminatory reason for its action, the plaintiff must also prove "one further element of his claim, namely, that the reason given by the defendant, or reasons given by the defendant, was not the real reason for the termination of his employment. That is that the defendant's asserted reasons are false or a pretext." The judge then did state, as Liberty complains, that "[i]f you find that the plaintiff has proven that the reasons given by the defendant are not believable or not the real reasons for the decision, then you must return a verdict for the plaintiff." She also stated that the plaintiff "bears the burden of proof on the ultimate issue of discrimination, and therefore must produce evidence that more likely than not, the articulated reason was a pretext."

Immediately after making these statements, however, the judge further stated that "[t]he burden is on the plaintiff to prove that, but for his age, his employment would not have been terminated." The judge then instructed the jury that a critical issue in the case was the defendant's intent and that such intent could be proven by direct or circumstantial evidence and, further, that if the jury found that the defendant was motivated in part by unlawful bias and in part by a legitimate reason, then the defendant must prove that it would have made the same decision regardless of the plaintiff's age. The judge then stated the following:

·

"When assessing a plaintiff's claim that the reason given by the defendant is a pretext, you should focus on the motivation of the employer, not its business judgment. While an employer's judgment or course of action may seem poor or erroneous or mistaken, *the relevant question is simply whether the given reason was a pretext for illegal discrimination*, not whether it was the correct decision or a smart or intelligent decision, but *whether it was a pretext for illegal discrimination*" (emphases added).

The judge further explained:

"The employer's stated legitimate reason must be reasonably articulated and non-discriminatory, but it does not have to be a reason that you, the jury, would act on or approve. An employer is entitled to make its own policy and business judgments and may, for example, fire an adequate employee to hire one who will be even better, *as long as that is not a pretext for discrimination*" (emphasis added).

Thus, while the judge told the jury that they were required to find for the plaintiff if they found pretext, she also told the jury that, by pretext, she meant pretext for discrimination. Read as a whole, these instructions were adequate to inform the jury that the plaintiff was required to prove that Liberty had acted with a discriminatory motive or intent. See *Dartt* v. *Browning-Ferris Indus., Inc. (Mass.)*, 427 Mass. 1, 12 & n.18 (1998).

Liberty's reliance on *Abramian* v. *President & Fellows of Harvard College, supra*, and *Lipchitz* v. *Raytheon Co., supra*, is misplaced. In *Abramian*, 432 Mass. at 115, during its deliberations, the jury sent a question to the judge stating that they were "confused after reviewing [his] instructions" and specifically asking whether they were "bound" to find discrimination if they found pretext. The judge responded, "The answer to your question is 'Yes,' " and thereby explicitly and improperly directed the jury to find discrimination if they found pretext.

In *Lipchitz*, 434 Mass. at 499 n. 11, the judge began his instructions by stating that the burden with respect to pretext was on the plaintiff "to prove by a fair preponderance of the evidence that the reasons given by the defendant were not the

real reasons for failing to promote her . . . but were a pretext for gender discrimination," but then went on to state that the plaintiff could satisfy this burden by proving "that the employer's articulated reason or reasons was not the real reason or reasons for the hiring decision." The court found that the "entire import" of the judge's instruction on the plaintiff's burden to establish liability "was whether she had proved 'pretext,' not whether she had proved that [the defendant] had refused to promote her 'because of . . . [her] sex,' " and that the error was "compounded by the additional instruction that if [the plaintiff] established that the reasons given by [the defendant] were not its 'real reason,' she had established [the defendant's] liability and the jury were to move on to the question of assessing damages." *Id.* at 502-503.

Here, by contrast, the judge started by telling the jury that the plaintiff was required to prove pretext but then went on to explain that the precise question the jury were called upon to decide was "not whether [the defendant's course of action] was the correct decision or a smart or intelligent decision, but whether it was a pretext for illegal discrimination." Viewing the instructions as a whole, the judge did not direct the jury to find discrimination if they found pretext alone.

We therefore reject Liberty's claim that, in instructing the jury, the judge committed error requiring reversal. We note, however, that the Supreme Judicial Court has expressly cautioned trial judges against continuing to draw jury instructions from the *McDonnell Douglas* "analytical framework," which was "established in the context of summary judgment 'to give judges a method of organizing evidence and assigning the burdens of production and persuasion in a discrimination case,' " *Lipchitz* v. *Raytheon Co., supra* at 508, quoting from *Loeb* v. *Textron, Inc.,* 600 F.2d 1003, 1016 (1st Cir. 1979), but has been "problematic" when used as a basis of jury instructions. *Lipchitz* v. *Raytheon Co., supra* at 507.

2. *Lost pension benefits.* Lost pension benefits are recoverable in an action under G. L. c. 151B. See *Talbert Trading Co.* v. *Massachusetts Commn. Against Discrimination,* 37 Mass. App. Ct. 56, 65 (1994). See also Lindemann & Grossman, Employment Discrimination Law 1817 (3d ed. 1996) ("lost pension and other fringe benefits may be recoverable as part of front

pay"). Nevertheless, Liberty claims that the evidence was insufficient to support the jury's award of such lost pension benefits in this case because there was no evidence that, but for his layoff, the plaintiff would have remained employed at Liberty until he was sixty-five years old, and Liberty presented substantial evidence to the contrary. Liberty also claims that the jury relied on impermissible speculation in awarding such benefits, see *Conway* v. *Electro Switch Corp.*, 402 Mass. 385, 388 (1988), and that, in any event, their award of such lost pension benefits was inconsistent with their award of only $14,400 in front pay.

In fact, the plaintiff's evidence showed that, prior to his layoff, he had been employed continuously at Liberty for twenty-four years and fully intended to remain at Liberty for an additional fourteen years when he would turn sixty-five. While Liberty presented evidence that it had experienced layoffs in the past and had reorganized the plaintiff's department, it presented no evidence that any further layoffs were contemplated or that, absent age discrimination, the plaintiff was likely to be included in any such layoff. The evidence therefore was not insufficient to support the jury's finding that, but for his layoff, the plaintiff likely would have remained employed at Liberty for an additional fourteen years when he would become sixty-five. The jury's accompanying award of lost pension benefits was also not impermissibly speculative. See *Handrahan* v. *Red Roof Inns, Inc.*, 48 Mass. App. Ct. 901, 902 (1999) (jury's conclusion that, but for discrimination, the plaintiff would have continued to work at the defendant employer for an additional thirty years until her retirement was reasonable based on her earnings history and her intention to continue her employment with the defendant for the rest of her working life). Contrast *Schrand* v. *Federal Pac. Elec. Co.*, 851 F.2d 152, 159 (6th Cir. 1988) (front pay denied because the employee would have been terminated when the office in which he worked closed); *Burns* v. *Texas City Ref., Inc.*, 890 F.2d 747, 753 (5th Cir. 1989) (front pay denied where the employer's sale of its assets resulted in the termination of nearly all employees).

We also reject Liberty's claim that the jury's award of lost pension benefits was inconsistent with its award·of only two

years' worth of front pay. As the judge specifically noted in her ruling on Liberty's motion for a new trial, the jury's limited award of front pay could have been based on a finding that, after such two-year period, the plaintiff's salary at Fidelity would have been equal to his salary at Liberty, particularly when bonuses were taken into account. It did not suggest a finding that the plaintiff would not have remained at Liberty until he had reached the age of sixty-five if he had been permitted to do so.

We therefore conclude that the jury's award of lost pension benefits in this case was based on sufficient evidence and was not otherwise improper.

3. *Prejudgment interest*. We agree with Liberty that prejudgment interest should not have been allowed on the portions of the award for front pay and lost pension benefits. See *Kuppens* v. *Davies*, 38 Mass. App. Ct. 498, 500 (1995). We therefore will order modification of the judgment to provide that prejudgment interest is allowed only on those portions of the judgment representing amounts for back pay and emotional distress damages.

*Conclusion*. The judgment shall be modified to provide that prejudgment interest is allowed only on those portions of the judgment representing amounts for back pay ($13,600) and emotional distress damages ($25,000). As so modified, the judgment is affirmed.

*So ordered.*