Lauriat, Peter M., J.
Kamee Verdrager (“Ms. Verdrager”) brought this employment discrimination action against Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C. (“Mintz Levin”), and certain of its partners, R. Robert Popeo (“Mr. Popeo”), David Barmak (“Mr. Barmak”), Bret Cohen (“Mr. Cohen”), Robert Gault (“Mr. Gault”), and Donald Schroeder (“Mr. Schroeder”), alleging sex discrimination and retaliation under G.L.c. 15 IB, and tortious interference with advantageous employment relations. The defendants now separately move for summary judgment on all of Ms. Verdrager’s claims. For the following reasons, the defendants’ motions are allowed.
BACKGROUND
In June of 2004, Ms. Verdrager was hired as an attorney and began working at Mintz Levin as an associate in the Employment, Labor, and Benefits section (“ELB”) of the firm. Based on her 1999 law school graduation date, Ms. Verdrager was placed in Mintz Levin’s fifth-year associate class. Shortly after beginning her employment, Ms. Verdrager complained to a member of the ELB section, Henry Sullivan, and to the firm’s Managing Member, a Mr. Biagetti, about another member of the section, Mr. Cohen. Ms. Verdrager took issue with Mr. Cohen’s treatment of associates, his management style, and his interpersonal skills. She also complained to Mr. Gault, the ELB section manager at the time.
Thereafter, Mr. Gault discussed Mr. Cohen’s behavior with other members of the firm, and Mintz Levin hired an executive coach to work with Mr. Cohen to improve his management style. In addition, Mr. Gault took measures to limit the amount of work Ms. Verdrager had with Mr. Cohen by soliciting assignments for Ms. Verdrager from other members.
In October of 2004, Ms. Verdrager’s first evaluation at Mintz Levin took place. That evaluation included *34 comments from Mr. Cohen, Mr. Gault, and Mr. Schroeder. The evaluation contained some criticism and notes regarding areas of improvement, but Ms. Verdrager was deemed to be at a level of “always meets expectations” in most categories. In this evaluation, Mr. Schroeder noted that Ms. Verdrager needed to work on proofreading and analytical writing skills, and Mr. Cohen expressed concern about Ms. Verdrager’s writing as well. Following this review, members of the ELB section occasionally e-mailed amongst themselves and with human resources personnel about their hesitance in giving assignments to Ms. Verdrager and about specific performance-related issues.
In January of 2005, the next event leading to a complaint against Mr. Cohen by Ms. Verdrager took place. For the prior two months, Ms. Verdrager had been working on a research project for the American Bar Association which Mr. Cohen had assigned to her. Ms. Verdrager complained to Mr. Gault about the assignment, specifically that she was given a greater number of court opinions to research than other associates. Mr. Gault reviewed the material and spoke to Mr. Cohen before referring the matter to the human resources director, Wendy Starr, and the vice president of Professional Development, Rosemary Allen. Ms. Starr’s and Ms. Allen’s investigation concluded that there was no evidence of gender discrimination related to Mr. Cohen’s assignment. Thereafter, Ms. Verdrager did not work with Mr. Cohen. Ms. Starr and Ms. Allen conducted a further review of Ms. Verdrager’s 2005 complaint. Ms. Starr believed that Ms. Verdrager was “gaming the system” in relying on claims of gender discrimination to avoid negative feedback related to her work product.
In April of 2005, Ms. Verdrager received her first annual performance evaluation. In this review, the overall assessment showed that Ms. Verdrager “usually meets expectations.” Mr. Gault and Mr. Schroeder both commented that Ms. Verdrager’s writing needed improvement and that she needed to exhibit a greater attention to detail. Following this review, Ms. Verdrager complained to Ms. Allen that certain aspects of Mr. Gault’s comments in the evaluation were immaterial and involved issues prior to her initial review in October. Ms. Allen subsequently allowed Ms. Verdrager’s request to have some of Mr. Gault’s comments removed from the evaluation.
In September of 2005, Ms. Verdrager notified Mr. Gault that she was pregnant. Prior to going on her first maternity leave in May of 2006, Ms. Verdrager experienced some pregnancy-related medical issues and was placed on short-term disability leave with a 50% reduced work schedule. Evidence in the record reveals that Mr. Gault and Mr. Schroeder exhibited frustration with Ms. Verdrager’s unavailability and questioned amongst themselves via e-mail whether her disability was legitimate.
While Ms. Verdrager was on maternity leave, in June of2006, Mr. Barmak succeeded Mr. Gault as ELB section manager. While on maternity leave, Ms. Verdrager was asked to come into the office for a meeting with Mr. Barmak and Mr. Schroeder. Mr. Barmak and Mr. Schroeder informed Ms. Verdrager that she would be subject to a 90-day interim review after she returned from maternity leave. The interim review was to address concerns about Ms. Verdrager’s performance prior to her maternity leave. In November of 2006, Ms. Verdrager returned from maternity leave and thereafter had low annualized billable hours compared to other attorneys in the ELB section.
In January of 2007, Ms. Verdrager was scheduled for her Senior Associate review, the review where associates are considered for elevation to membership in the firm based on class year. Rather than hold a review regarding Ms. Verdrager’s elevation to membership, Ms. Starr and Mr. Barmak offered Ms. Verdrager a step-back of her seniority status by two years. This decision was made largely to prolong the “runway” for Ms. Verdrager to demonstrate her legal abilities and be considered for membership in the future. Initially, the ELB section planned on recommending Ms. Verdrager’s termination, but Mr. Popeo asked the section to consider an alternative. Ms. Verdrager accepted the step-back option. The step-back resulted in a decrease in salary and a lower billable hourly rate. After accepting the step-back, Ms. Verdrager complained internally of gender discrimination and retaliation. Her complaints were reviewed by the Rapid Workforce Response Team (“RWRT”), the internal committee at Mintz Levin charged with investigating employee complaints of discrimination and retaliation.
On December 11, 2007, Ms. Verdrager filed a complaint with the Massachusetts Commission Against Discrimination (“MCAD”), naming Mintz Levin, Mr. Barmak, Mr. Gault, and Mr. Schroeder as respondents. In February of 2008, Ms. Verdrager took her second maternity leave. She returned to the firm in September of 2008. In late 2008, Mintz Levin determined that it would need to lay off some employees to address excess capacity. Mintz Levin identified Ms. Verdrager as one of the employees to be laid off, citing underutilization, and notified Ms. Verdrager of terms of a severance offer. Ms. Verdrager rejected the terms of the offer. However, the planned lay off never took place as Ms. Verdrager was terminated for cause on November 25, 2008.
On November 21, 2008, Ms. Verdrager reported to Kim Marrkand, a member at Mintz Levin, that she was aware of documents indicating widespread discrimination within Mintz Levin, principally a transcript of Mintz Levin Chairman R. Robert Popeo’s voicemails. Ms. Marrkand brought this to Mr. Popeo’s attention. Mintz Levin conducted a review of its electronic file system to determine which documents Ms. Verdrager *35 had accessed under the firm’s DeskSite system. The DeskSite system allowed Mintz Levin employees to search for internal documents primarily for collaboration and research purposes.[1]
Mintz Levin’s review showed that Ms. Verdrager conducted searches on approximately six different occasions for purposes of bolstering her discrimination claim or supporting her litigation against Mintz Levin. The review also found that Ms. Verdrager had copied and transmitted internal documents for her personal use. On November 25, 2008, Mr. Popeo was notified of the review findings. Believing that Ms. Verdrager had violated Mintz Levin’s confidentiality[2] and computer use policies,[3] as well as the Massachusetts Rules of Professional Conduct, Mr. Popeo immediately directed that Ms. Verdrager’s employment with the firm be terminated.
Mr. Popeo, on behalf of Mintz Levin, filed a complaint against Ms. Verdrager with the Board of Bar Overseers (“BBO”) shortly after her termination. The matter was ultimately appealed to a single justice of the SJC by Bar Counsel. Justice Spina concluded that Ms. Verdrager had not violated Mass.R.Prof.C. 8.4, analogizing her actions to an employee having “accidently” stumbled upon confidential documents.
Ms. Verdrager filed a second MCAD complaint on September 4, 2009, naming Mintz Levin, Mr. Barmak and Mr. Popeo as respondents. In November of 2009, she filed her present action in Superior Court, and in January 2012, she filed an amended complaint, naming Mintz Levin, Mr. Popeo, Mr. Barmak, Mr. Gault, Mr. Schroeder and Mr. Cohen as defendants. The amended complaint alleged six claims against the defendants: (1) sex discrimination in employment under G.L.c. 15IB, §4(1) (against Mintz Levin, Mr. Barmak, Mr. Schroeder, Mr.' Gault and Mr. Popeo); (2) pregnancy discrimination under G.L.c. 15 IB (against Mintz Levin); (3) aiding and abetting discrimination (against Mr. Popeo, Mr. Barmak, Mr. Gault and Mr. Schroeder); (4) retaliation under G.L.c. 15IB §4(4) (against Mintz Levin, Mr. Barmak, Mr. Popeo, Mr. Gault and Mr. Schroeder); (5) failure to investigate and remedy (against Mintz Levin); and (6) tortious interference with business relations (against Mr. Cohen).
The defendants initially moved dismissal of Ms. Verdrager’s Complaint as a sanction for her litigation misconduct. The court (Cosgrove, J.) denied their motion, but stated that it did not condone Ms. Verdrager’s search of the DeskSite System and noted alternate sanctions that Mintz Levin could seek going forward with litigation.
DISCUSSION
The defendants have now moved for summary judgment on all counts of Ms. Verdrager’s complaint. “A party moving for summary judgment . . . has the burden of demonstrating that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law.” Mass.RCiv.P. 56(c); Community Nat’l Bank v. Dawes, 369 Mass. 550, 554 (1976); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 713-14 (1991). The burden on the moving party may be satisfied either by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating “that the party opposing the motion has no reasonable expectation of proving an essential element of that party’s case.” Kourouvacilis, 410 Mass. at 716. In deciding a motion for summary judgment, the facts must be viewed “in the light most favorable to .. . [the nonmoving party], taking all the facts set forth in its supporting affidavits as true.” G.S. Enterprises, Inc. v. Falmouth Marine, Inc., 410 Mass. 262, 263 (1991), citing Graham v. Quincy Food Serv. Employees Ass’n & Hosp., Library & Pub. Employees Union, 407 Mass. 601, 603 (1990).
I. Statute of Limitations
Mr. Cohen, Mr. Gault, and Mr. Schroeder contend that the claims asserted against them are time-barred under G.L.c. 15 IB and Massachusetts tort law. Ms. Verdrager provides no substantial counter-argument on this point and merely states, in a footnote in her opposition memorandum, that the untimely evidence, while not supporting any independent causes of action, is meant to inform the court in evaluating the legitimacy of her timely claims.
Under G.L.c. 151B, §5, a complainant must file an MCAD complaint “within 300 days after the alleged act of discrimination.” The Supreme Judicial Court has held that “where applicable, G.L.c. 151B provides the exclusive remedy for employment discrimination not based on preexisting tort law or constitutional protections, and that the plaintiffs failure to adhere to the requirements of G.L.c. 151B require[s] the dismissal of his complaint.” Charland v. Muzi Motors, Inc., 417 Mass. 580, 586 (1994). Pursuant to G.L.c. 15 IB, §9, after filing an MCAD complaint, a plaintiff may bring a civil action within three years of the alleged unlawful discriminatory practice.
The claims against Mr. Schroeder and Mr. Gault are time barred. Ms. Verdrager has not alleged a hostile work environment and has not asserted that the “continuing violation doctrine” applies to her case. The claims against Mr. Schroeder and Mr. Gault stem from actions alleged to have taken place beyond the 300-day time limit of G.L.c. 151B, §5. Ms. Verdrager asserts that Mr. Gault discriminated against her during his tenure as section leader. Mr. Gault left that position in 2006. The latest allegations against Mr. Schroeder took place in January 2007, when Ms. Verdrager asserted that Mr. Schroeder made unfair statements related to her evaluation. Ms. Verdrager has alleged no actions by Mr. Schroeder or Mr. Gault within the 300-day time limitation. Similarly, Mr. Schroeder and Mr. Gault’s alleged actions, and those of other Mintz Levin employees, are not sufficiently intertwined to *36 subject Mr. Schroeder or Mr. Gault to the 300-day limitation period. Neither Mr. Gault nor Mr. Schroeder participated in the decision to subject Ms. Verdrager to a step-back in January of 2007 or to terminate her employment at Mintz Levin in November of2008. As a result, Ms. Verdrager’s claims against Mr. Schroeder and Mr. Gault must fail.
Under Massachusetts law, a tort action must be commenced within three years after the cause of action accrues. G.L.c. 260, §2A. Ms. Verdrager’s claims against Mr. Cohen are also time barred, having failed to meet the time limitations of G.L.c. 15IB and general tort law. The claim of tortious interference with business relationships (Count Six) against Mr. Cohen cannot stand where the tortious conduct alleged took place in 2004, and Ms. Verdrager did not bring her claim against him until January 2010. Moreover, because Ms. Verdrager did not include Mr. Cohen in her MCAD complaint, she cannot rely on any “adverse employment action” (the step-back or her termination) to establish an accrual date against Mr. Cohen. The entirely of Mr. Cohen’s alleged conduct at issue falls well outside the three-year statute of limitations under Massachusetts tort law.
Accordingly, summary judgment shall enter in favor of Mr. Gault and Mr. Schroeder on Count One (sex discrimination in employment), Count Three (aiding and abetting discrimination), and Count Four (retaliation) of the Amended Complaint. Summary judgment shall also enter in favor of Mr. Cohen on Count Six of the Amended Complaint (tortious interference with advantageous employment relations).
II. Discrimination Claims
Mintz Levin, Mr. Popeo and Mr. Barmak assert that Ms. Verdrager cannot point to genuine issues of material fact to support her claims of gender and pregnancy discrimination. Ms. Verdrager responds that the conduct of each of the defendants support her claims, and that her step-back and termination were the result of discriminatory animus against her as a female and as a pregnant person.
When evaluating employment discrimination claims under G.L.c. 151B, the court must apply the three-stage, burden-shifting framework articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973). The first stage requires that the plaintiff establish a prima facie case of discrimination by a preponderance of the evidence. Sullivan v. Liberty Mutual Insurance Company, 444 Mass. 34, 40 (2005). Generally, the prima facie case for discriminatory termination requires the plaintiff to show that (1) she is amember of aprotected class under c. 151B; (2) she performed her job satisfactorily; (3) she was terminated; and (4) the employer retained other employees outside of the plaintiffs protected class in the same position or did not treat protected characteristics neutrally in deciding which positions to eliminate. See id. at 42-43; Ventresco v. Liberty Mutual Ins. Co., 55 Mass.App.Ct. 201, 207 (2002). The analysis must be adjusted slightly for each set of facts presented and can be applied to any “adverse employment action.” See Beal v. Board of Selectmen ofHingham, 419 Mass. 535, 541 (1995). While the term “adverse employment action” is not contained in the statute, courts have used it to refer to “the effects on working terms, conditions, or privileges that are material.” King v. City of Boston, 71 Mass.App.Ct. 460, 468 (2008).
Ms. Verdrager has established a prima facie case with respect to both adverse employment actions, i.e., her step-back and her termination. She is a member of a protected class; she was performing at an acceptable level; she was subject to adverse employment actions; and other male associates and non-pregnant females were not subject to these actions at the same time.
If a primafacie case of discrimination is made, then the burden shifts to the employer to rebut the case by “produc[ing] credible evidence to show that the reason or reasons advanced were the real reasons.” Matthews v. Ocean Spray Cranberries, Inc., 426 Mass. 122, 128 (1997) (citation omitted). The employer’s burden is one of production rather than persuasion. That is, the employer “need not prove that the reasons were nondiscriminatoiy.” Sullivan, 444 Mass. at 51, quoting Abramian v. President & Fellows of Harvard College, 432 Mass. 107, 117 (2000). A careful review of the record before the court shows that Mintz Levin has produced evidence to support its position that the step-back decision was based upon performance concerns and that such a decision was not uncommon at Mintz Levin. The firm’s showing is supported by evidence that members had voiced concerns about Ms. Verdrager’s skill-set prior to her first maternity leave, during formal performance reviews and in informal e-mail exchanges between members, particularly with respect to her analytical writing abilities. The evidence also indicates that Mr. Popeo himself encouraged the ELB section to offer Ms. Verdrager the alternative of a step-back in seniority, rather than termination. Further, Mintz Levin has produced evidence that delaying membership consideration to allow associates to develop their skills was a regular practice, and that the majority of associates never reach membership status. The Mintz Levin employees who were elevated to membership from 2006-2012 had an experience range of 8 to 21 years.
Mintz Levin has also put forth ample evidence on the record to show that Ms. Verdrager’s termination was a result of her accessing internal documents via DeskSite for the purpose of using them against Mintz Levin, in violation of firm policies. Ms. Verdrager argues that her access was authorized and appropriate since all documents she viewed were under the “public” designation, and that the firm’s privacy policy allows for personal use of firm computers. Ms. Verdrager further relies on the decision of SJC Justice Spina *37 in Bar Counsel’s appeal in her BBO matter. Mintz Levin contends that the “public” designation does not permit Mintz Levin attorneys to search for documents for their own use to the firm’s detriment or to support claims against the firm. In addition, Mintz Levin argues that the policy permitting personal computer use relates to checking one’s personal e-mail or a news site, not to sifting through confidential firm materials to build a claim against the firm.
Whether or not a single justice of the SJC found Ms. Verdrager to be in violation of Mass.R.Prof.C. 8.4 is immaterial to Mr. Popeo’s decision to terminate Ms. Verdrager upon learning that she violated the firm’s policy. Mr. Popeo and Mintz Levin were not parties to the action brought by Bar Counsel against Ms. Verdrager. Moreover, an employer is not required to show that an employee acted illegally or unethically in making an employment decision, so long as the decision has reasonable support in the evidence and is not “wholly disbelievable.” See Wheelock College v. MCAD, 371 Mass. 130, 138-39 (1976).
Setting aside any question as to whether Ms. Verdrager violated an ethical obligation, it is clear that, under its policies, Mintz Levin does not allow across-the-board access to files so that employees can seek out documents unrelated to client matters, or for the purposes of advancing claims against the firm. As the court (Cosgrove, J.) noted in its Memorandum of Decision and Order on Defendants’ Motion for Sanctions in the Form of Dismissal on the Basis of Litigation Misconduct, “Verdrager violated Mintz, Levin’s EIS Policy and Confidentiality Policy, and therefore abused the trust placed in her by the firm . . . Mintz, Levin did not authorize Verdrager to access privileged and confidential communications for the purpose of exploiting them to her advantage in litigation against the firm.” Id. at 21. Accordingly, Mintz Levin has demonstrated that it had a legitimate reason to terminate Ms. Verdrager’s employment.
. Where the employer meets its burden, the third stage of the McDonnell Douglas framework requires the plaintiff to establish that the basis of the employer’s decision was unlawful discrimination “by adducing evidence that the reasons given by [the employer] for its actions were mere pretexts to hide such discrimination.” Lewis v. Boston, 321 F.3d 207, 214 (1st Cir. 2003). Summary judgment in favor of the employer is appropriate where the employer has introduced credible evidence of nondiscriminatory legitimate business reasons for its actions, and where the summary judgment record reveals that the plaintiff would be unable to demonstrate that the defendant’s proffered reasons are pretextual. Matthews, 426 Mass. at 127.
Ms. Verdrager is tasked at this stage with establishing that the reason presented by Mintz Levin for her termination is pretextual, and that the actual motivation was a discriminatory intent. Ms. Verdrager can establish that members in the ELB section exhibited dissatisfaction with her availability and performance leading up to her first maternity leave. However, Mintz Levin’s reason for offering Ms. Verdrager a step-back rather than membership consideration cannot be considered pretextual; there is no evidence that it was designed to hide a discriminatory motive. Ms. Verdrager has failed to meet her burden under the third stage of this analysis. She cannot establish that her step-back was the product of gender discrimination.
With respect to her termination, Ms. Verdrager recites specific instances where members of the ELB section were unsupportive and critical of her throughout her employment, and particularly during the time when she experienced pregnancy-related medical issues. However, there is no evidence that Mr. Popeo’s decision to terminate Ms. Verdrager’s employment upon learning of her unauthorized computer use was truly motivated by a desire to terminate her due to her gender or her pregnancies. Mr. Popeo supported Ms. Verdrager’s continued employment when he encouraged the step-back as an alternative to termination. His decision to terminate Ms. Verdrager came immediately after learning of her computer misuse, which, as the record shows, he genuinely believed violated Mintz Levin’s confidentiality and computer use policies, as well as the Massachusetts Rules of Professional Conduct. Accordingly, Ms. Verdrager cannot establish that the adverse employment actions initiated against her were the result of gender or pregnancy discrimination under the McDonnell Douglas framework and G.L.c. 151B. Summary judgment in favor of the defendants must be entered as to Counts One and Two of the Amended Complaint.
III. Retaliation
Defendants Mintz Levin, Mr. Popeo and Mr. Barmak contend that Ms. Verdrager cannot establish material facts to support her claim of retaliation. Ms. Verdrager argues that the conduct of each of the defendants support her claim, and that her step-back and her termination were the result of a discriminatory animus against her as a female and due to her pregnancy. Despite having a similar analytical framework, claims of employment discrimination and retaliation must be reviewed separately.
To establish a claim for retaliation under G.L.c. 15IB, a plaintiff must show that (1) she engaged in a protected activity; (2) she was subjected to an adverse employment action at the time or after the protected activity took place; and (3) a causal connection exists between the adverse action and the protected conduct. Mole v. University of Mass., 442 Mass. 582, 591-92 (2004). The plaintiff is not required to prove that discrimination actually occurred, but must show that she “reasonably and in good faith believed that the [employer] was engaged *38 in wrongful discrimination, that she acted reasonably in response to her belief, and that the [employer’s] desire to retaliate against her was a determinative factor in its decision to terminate her employment.” Tate v. Department of Mental Health, 419 Mass. 356, 364 (1995). The mere fact that an adverse employment action took place following an employee’s protected conduct does not establish a prima facie case for retaliation, however, the proximity in time between the employee’s conduct and the adverse action is considered a significant factor. MacCormack v. Boston Edison Co., 423 Mass. 652, 662 n. 11 (1996). “If adverse action is taken against a satisfactorily performing employee in the immediate aftermath of the employer’s becoming aware of the employee’s protected activity, an inference of causation is permissible.” Mole, 442 Mass. at 592.
Here, the plaintiff can establish the first three elements. Ms. Verdrager is and was a member of a protected class who made discrimination claims internally and later formally through the MCAD process. The record before the court presents the same two identifiable “adverse employment actions” as those in Verdrager’s discrimination claims: her step-back and her termination. The step-back followed Ms. Verdrager’s internal complaints of discrimination, and the termination took place after her formal complaint to the MCAD was filed.
Looking first at the step-back action, Ms. Verdrager complained internally of discrimination stemming from her interactions with Mr. Cohen in 2004 and 2005. Although she cites to multiple instances where members of the ELB section complained about her work performance and attitude, she does not provide any evidence that she continued to complain internally about gender or pregnancy discrimination. Ms. Verdrager may be able to establish a causal connection between her protected conduct in complaining internally of discrimination and her step-back in January of 2007, even though the temporal proximity that would ordinarily suggest retaliation is not especially strong in this case.
Turning to Ms. Verdrager’s termination, she is again able to establish her prima facie case. The causal connection element is met since her termination followed both her internal complaints and her MCAD complaint. The time frame relating to these events indicates that the MCAD complaint took place approximately a year before her termination. Even so, Ms. Verdrager took maternity leave in the interim, so the time period when she was working after her complaint with the MCAD may be considered more closely linked to her termination. However, even assuming that Ms. Verdrager’s temporal evidence as to her step-back and termination are sufficient to create an inference of causation, her claims fail upon further analysis.
Once the plaintiff has established her prima facie case, the defendant has the burden of production to show a legitimate, nondiscriminatoiy reason for the adverse employment action. Id. at 591. The legitimate, nondiscriminatoiy reason advanced by the defendant must be supported by credible evidence to show that the reason offered was in fact the real reason for the adverse employment action. Id. at 591-92.
The defendants have articulated non-retaliatory reasons for Ms. Verdrager’s step-back and dismissal, which are explained above. The burden thus returns to Ms. Verdrager to show that the defendants’ stated reasons were pretextual, and that the real reasons for the adverse employment actions were retaliation.
There is no evidence that the step-back option was designed to retaliate against Ms. Verdrager for her complaints over a year earlier with regard to Mr. Cohen. Similarly, given that Mintz Levin’s and Mr. Popeo’s stated reason for Ms. Verdrager’s termination was her inappropriate conduct during her employment, Ms. Verdrager cannot overcome her burden to demonstrating that the reason for her termination was a pretext, and that the real reason was to retaliate against her protected activity under G.L.c. 15 IB. There is no evidence to establish that Mr. Popeo’s stated reason was not his real reason for terminating Ms. Verdrager’s employment, or that Mr. Popeo’s explanation for her dismissal was designed to hide retaliatory conduct related to discrimination complaints she had asserted at least several months earlier.
Ms. Verdrager argues that Mintz Levin’s stated reason for her termination cannot be considered valid since a single justice of the SJC found that she did not violate Mass.R.Prof.C. 8.4.[4]This argument fails for the same reasons that it failed as to Ms. Verdrager’s discrimination claims. See infra. Ms. Verdrager cannot show, as a matter of law, that Mintz Levin, Mr. Barmak or Mr. Popeo retaliated against her by offering her a step-back in seniority or in terminating her employment. Thus, summary judgment shall enter in favor of the defendants as to Count Four of the Amended Complaint.
IV. Aiding and Abetting Discrimination
Mr. Popeo and Mr. Barmak have also moved for summary judgment on Ms. Verdrager’s claim of aiding and abetting discrimination. A claim for aiding and abetting discrimination is wholly derivative of a discrimination claim. Abramian v. President & Fellows of Harvard, 432 Mass. 107, 122 (2000). Because this court has concluded that the principal claim of discrimination cannot be established against these defendants, the claim of aiding and abetting must also be dismissed. Summary judgment shall enter in favor of the defendants on Count Three of the Amended Complaint.
*39 V. Failure to Investigate and Remedy
Mintz Levin has also moved for summaiy judgment on Ms. Verdrager’s claim that it failed to investigate and remedy alleged discrimination under G.L.c. 151B, §4. Similar to the aiding and abetting claim, a claim for failure to investigate and remedy alleged discrimination cannot survive absent an actionable discrimination claim. In Keeler v. Putnam Fiduciaty Trust Co., 238 F.3d 5 (1st Cir. 2001), the First Circuit considered whether a claim for failure to investigate and remedy could give rise to independent liability beyond a failed age discrimination claim. Id. at 13. The court explained that G.L.c. 151B and the sparse case law on the subject suggested that “the duty to investigate makes far more sense as a further explanation for imposing liability on an employer who was told correctly that harassment had occurred but did nothing to prevent it.” Id.
Because Ms. Verdrager has no actionable gender or pregnancy discrimination claim, she cannot prevail on a claim for failure to investigate and remedy discrimination. Further, evidence exists that Mintz Levin did in fact investigate each complaint brought to it by Ms. Verdrager. Mintz Levin’s internal complaint response team, the RWRT, specifically reviewed Ms. Verdrager’s complaints, and human resources personnel conducted extensive interviews relating those complaints. Mintz Levin also hired an executive coach to address Mr. Cohen’s ineffective management style following Ms. Verdrager’s internal complaints to Mr. Gault and other members of the firm. Accordingly, Mintz Levin’s motion for summary judgment on Count Five must be allowed.
ORDER
For the foregoing reasons, Defendants Mintz Levin and R. Robert Popeo’s Motion for Summaiy Judgment is ALLOWED; Defendant Bret Cohen’s Motion for Summary Judgment is ALLOWED; Defendant David Barmak’s Motion for Summary Judgment is ALLOWED; Defendant Donald Schroeder’s Motion for Summary Judgment is ALLOWED; Defendant Robert Gault’s Motion for Summary Judgment is ALLOWED.

Mintz Levin’s DeskSite system allowed users to designate internal documents as “public” or “private,” with “public” being the default setting. Public documents were viewable by all employees. Private documents could be limited to specific viewers and required password access.

The Mintz Levin "Confidentiality Policy” lays out explicitly the importance of protecting client-related information. It provides in part that “Adherence to this policy is a condition of continued employment and violation of the policy may result in immediate termination of employment.” The policy also states: “[I]t is presumed that all information regarding a client or a potential client is confidential. Accordingly, disclosure of any such information is prohibited absent specific authorization from the client . . .” and “[PJlease remember that it is also essential to maintain confidentiality and exercise sensitivity regarding general firm business and internal firm and staff related matters and to treat such matters as confidential.”

The Mintz Levin “Electronic Information Systems Acceptable Use Policy” provides in part that ‘The [Electronic Information Systems] should be used, with limited exceptions only, for job-related communications. Although limited personal use is permitted, employees should do so with the full understanding that nothing is private.”

In her Amended Complaint, Ms. Verdrager does not specifically allege that the BBO complaint initiated by Mr. Popeo constituted retaliatory action. Even if she had claimed that the BBO complaint constituted potentially retaliatory conduct by Mr. Popeo and/or Mintz Levin, the defendants had an ethical duly to report what they genuinely believed to be a violation of the Mass.R.Prof.C. 8.3. There is no evidence that Mr. Popeo did not actually hold this belief or that he filed the BBO complaint for any reason other than his concern about the ethical implications of Ms. Verdrager’s actions while employed at Mintz Levin. Accordingly, the filing of the BBO complaint would also not constitute retaliation under G.L.c. 151B.